Case number 204091 Derie Cheatham v. Postmaster General USPS Oral argument not to exceed 15 minutes per side Mr. Eisenlor for the plaintiff appellant you may proceed Good morning judges of the 6th circuit my name is Tobias Eisenlor I'm here on behalf of the appellant Derie Cheatham Ms. Cheatham was a long serving employee of the United States Post Office in the Corrieville branch up in Clifton. She took leave from work to undergo surgery after experiencing an injury on the job and requested reasonable accommodation for her return to work and was stonewalled by her supervisor and her supervisor's supervisor for a period of about a year and a half forcing her to eventually take disability retirement. One of the problems when you sort of start out with hyperbole is then we sort of focus in on that. So when you say she was stonewalled the post office was doing quite a few things here. Now you may claim they were not enough or in bad faith or whatever but how can you really say that she was stonewalled? Sir I believe that the cursory efforts that were made in the spring of 2016 when a few emails were sent to operations managers of other post offices, no response was received and there was zero follow up from Mr. Price whose job it was to try and secure a reasonable accommodation for Ms. Cheatham or Mr. Logan whose job it was to make sure that Mr. Price did his job of accommodating Ms. Cheatham. These efforts completely ceased after the spring of 2016 and nothing was done until the following year when Ms. Cheatham again requested reasonable accommodation for Mr. Price who ignored her, who later stated in his deposition that he didn't do anything because he thought it was somebody else's job. A job was in fact identified by Mr. Price in emails between him and Mr. Logan that Ms. Cheatham could have potentially been qualified for in the Cincinnati plant. This was over a year after her initial request for a reasonable accommodation. This job was never investigated. One of the problems that's hard to figure out looking at this record at least from my perspective is whether she was or wasn't qualified for her first set of restrictions versus whether she then became qualified for that job or more jobs under her second set of loosened restrictions. Could you address sort of that timing question for us? Absolutely. Ms. Cheatham submitted a list of work restrictions that restricted her to basically performing sedentary work. Mr. Price and Mr. Logan made very little effort to find an accommodation for her until the fall of the following year. This is about a year and a half after her initial request. She submitted a complaint to the EEO. Mr. Price then attempted to fire her about two weeks after she did that. They went in front of the DRAC committee. She submitted a revised list of restrictions, but the job that they ended up offering her was the exact same work that she had been performing prior to her taking leave. And it was a job where if you look at the essential functions and this is one of the places where the lower court was in error in how it ruled on the motion for summary judgment because they took the post office at its word that Ms. Cheatham could not have performed this job as a window clerk under her initial set of restrictions. But that job is a sedentary role. How was it posted? How was that job posted? Yes, the job description does not advertise it as requiring physical labor. Now they zeroed in on the fact that Ms. Cheatham in her prior work as the window clerk had done some moving of mail, although they said that she had to swing bags of mail, which is not a function that anyone at the post office does. Everything is now done in push cards. But it's not an essential function of the window clerk position. Just because she used to do it that way doesn't mean that that's the only way that her job could be done. And that's a major part of reasonable accommodation. They could have said you used to stand at the window. Now you need a stool. You can sit there. It doesn't mean that standing is an essential function just because that's how you used to do it. We can find a way around this. I'm sorry. Is your position that she could have come back to her regular window clerk position even when she first I think it was February, when she first said here are my restrictions. I want to come back. Yes, ma'am. She could have done that job. She had a list of restrictions that she would have been limited to. But there was a way that she could have been accommodated to do that same role that she'd been doing before, working at the window. Do I understand correctly that there's no specific description just for window clerk? There's sort of a generic description that includes both a window clerk and a distribution clerk? Yes. And that's where the essential function test comes into play. Because the way that the post office convinced the lower court to find that she couldn't have done this job was by saying in her prior role, she had used to do these certain physical activities, such as walking around the office, such as swinging bags of mail, which again is not something that anybody does who works at the post office. They all use these pushable rolling carts. But the court was convinced that because she used to do these functions, they must have been essential to the job. But what did you do to counter that? Well, the essential function test states that you need to look at her testimony about what her role was. It states that you need to look at what the job descriptions are, which again are unclear. And there is one further factor of what needs to be taken into account in the essential functions test, but it's a holistic test to determine what is it at the root of this job and what does it take in order to perform that. Did she ever ask to get her window clerk position back? She asked to be accommodated at the post office. I believe she wanted to go back to work at her old position. Now, she had been accommodated to work in a call center. I think what Judge Wright is trying to ask is did she ask for her old job back? I'm not aware if she asked specifically I want to go back to my job as a window clerk. But one of your complaints is that they didn't follow the interactive process here. So if she simply says these are my restrictions and then doesn't do anything to follow up on that, then why is that on the post office, at least not partially on her? Well, sir, she asked the post office. She said I'm back from surgery. I want to come back to work. Here are my restrictions. And at that point it becomes Mr. Price's job to try and follow through on the reasonable accommodation. All right. So he did something minimally the way you've described it. But what did she do in response to what you're now describing as stonewalling or minimal activity? Well, she made several efforts to communicate with them, such as in the spring of 2017 when she emailed Mr. Price again and said I'm still waiting on reasonable accommodation. And he ignored her. He never responded. And then later in his deposition he stated, oh, I didn't respond to her because I thought it was someone else's job. She made several efforts to... So let me just focus in on this. Until she went back to the doctor and the doctor reduced her restrictions, how many times did she initiate any contact between her and the post office during that approximate, what was approximate, one year period? One year and a half before she was eventually offered a job. All right. She contacted them on at least four occasions requesting a job. All right. Her initial request and email... Were any of those requests to go back to her original job? I don't know if she specifically said I want to go back to my job as a window clerk. She said I want to come back to work. And the Coreyville branch, I believe she wanted to perform what she was doing prior to having to take leave. But I can't tell you specifically that that's what she said. I don't want to go ahead and make a statement that I don't have a basis for. So do we know anything about the content of these contacts with Logan, those four contacts that happened between February and the summer or something? Well, her contacts were with Mr. Price and Mr. Logan. So there was her supervisor and then the human resources coordinator, whose job it was to make sure that Mr. Price was doing his job. But do we know anything about the content of those contacts? I can't tell you if she specifically said I want to go back to work as a window clerk. I know the content was essentially I am now cleared to come back to work under these restrictions. But was there anything in depositions or affidavits or anything? I feel like the summary judgment record is very sparse. Agreed. And I think that the contents of her communications were emails that she sent to Mr. Price stating I want to come back to work. Here are my restrictions. I can't tell you specifically what they said. I don't have the exhibits in front of me. They're all in a giant box. But I know that basically what she's saying is I'm ready to come back to work. Here's my list of restrictions. Please find me a reasonable accommodation. And at that point it's Mr. Price's job to say okay, we can either find her something in Corrieville or I can find her something in a similarly situated post office. So what he does is send an email or a couple of emails to other operations managers. Nobody responds to him at all and he never follows up on it. Mr. Logan's job as the human resources coordinator and Mr. Price's supervisor is to say you are responsible for finding a reasonable accommodation for Ms. Cheatham. He doesn't do anything to make sure that Mr. Price ends up doing his job. They sit on this for about a year until Ms. Cheatham again tries to contact Mr. Price. At this point she's been without work since November of 2015. She's been without pay. So she's looking at other options that she can try and do. She's being essentially ignored. Have you ever accommodated someone with these limitations? Yes. And she identified a similarly situated person. Limitations, four hours of work a day, sedentary work only, lifting no more than 10 pounds while sitting. That list, there's someone that came to them and said I've got these restrictions and the post office said we'll find you something and they did. They found accommodations for Ms. Becky Schneider. What were her restrictions? The restrictions were that she had to do sedentary work only. Four hours a day? It wasn't the exact same list of restrictions. That was the question. Understood, but it's essentially performing the same function. It's just the time limitation is different. There's no reason why they'd say she has to have a sedentary job. Did that have a lifting restriction, the one you're talking about? Yeah, it was sedentary work only. That was Ms. Schneider's restriction. Yeah, but you can still be sedentary and lift things. That can still happen, right? But the lifting restriction is for, I believe it's 70 pounds. People aren't sitting at their desks lifting heavy objects at the windows. That wasn't what they offered her. They offered her a position in November of 2017 back at the Corrieville Post Office. A modified position as a distribution clerk requiring her to lift up to 10 pounds. Yes, sir. You've said that's what she had been doing and she should have been given that job all along but they offer her the job. Let's just assume that they should have offered it to her earlier. I'm going to put that off to the side. She then rejected it. Yes, sir. And she rejected it because at this point it had been a year and a half since she initially requested accommodation. She was seeking the possibility of taking disability retirement. She had been, Mr. Price had attempted to fire her after she filed an EEO complaint. Their relationship had completely broken down. And when we talk about the interactive process But you've been saying up until right now that she wanted to just go back to her old job all the time during which she was lifting certain amounts. Yes, she was lifting a moderate amount. I'm just trying to figure out what we do with the fact that eventually, correctly or incorrectly, she's offered that job back and she declines it. Well, when she was offered the job Are you asking us to assume that if they'd offered it to her on a more timely basis, she would have accepted it? Yes, sir. And I think when you look at the unreasonable delay that took place. Is it supported in the record in any place? Yes, and I believe it's supported not only in the record but in the case law about what happens in the interactive process here. You know, when there's been an unreasonable delay that's been caused by the bad faith of the post office, and Ms. Cheatham has been without any pay at this point when they offer her the job. It's been two years. Supervisors attempted to fire her because she filed a complaint. They've retaliated against her. Is there at least a partial explanation for this lack of pay that you've alluded to a couple different times? That she got surgery on her foot but hadn't gotten it pre-approved for getting comp because she hadn't followed the procedures correctly. But they ended up going back and correcting that, correcting her status. And actually, Mr. Price had been instructed to I understand that, but in the meantime, isn't that at least a partial explanation as to why she wasn't getting some money? Well, I believe she just had to go and get the surgery. You know, she eventually had her status corrected to having been, they had stated she was on leave without pay. They finally corrected it in order to fix her retirement issues but she still went without money for that entire portion of time when she was unemployed, not able to be accommodated by the post office there. Comp is a substitute for pay. Yes, sir. Not full pay, but some pay. All I'm saying, it's not, I don't think this is hard. At least during a portion of the period when you're complaining that she didn't have any money coming in, so that made her mad, so she turns down the job that's finally offered to her. Isn't part of the reason no money was coming in is that she hadn't gotten the surgery pre-approved as related to her work? That is true. However, I would say How much of the time that you're complaining about is tied to that? Yes, and that's exactly what I was about to go to. She had the surgery. This is in November of 2015. Then in spring of 2016, she's ready to go back to work. She says, I'm requesting a reasonable accommodation. Here are my restrictions. And then it's a further year and a half until they actually end up offering her a position after making almost no efforts to find her one. After completely stopping the process in the summer of 2016, after ignoring her in the spring of 2017 when she asked them again, where's my reasonable accommodation? Her supervisor didn't even respond to her. He failed to fill out any of her medical forms that are required there. Judge White, did you have a question before? The job she was eventually offered was distribution clerk, which is different from window clerk, right? Yes, it is a different position. But it is essentially the same functions that she was performing before. As we talked about, the jobs are pretty closely tied together. So she was going back to a job that she could have performed and she did some of the functions with before she had taken them. Okay, now I'm confused because I thought distribution clerk has to be able to walk and distribute things to the other clerks. Yes, and she has to be able to move around a little bit, which she could have been accommodated for in her list of restrictions that she then gave to them. But she could have, prior to being offered the job of distribution clerk, been offered the job of window clerk, which she had done before under her list of restrictions that existed before. Okay. Alright, you'll get your full rebuttal. We'll hear from the government. Thank you. Good morning. Good morning. Good morning. May it please the Court, Kim Robinson on behalf of the United States Postal Service. Ms. Cheetham has the burden of showing that a vacancy existed during the relevant period of time. At this point, discovery is complete. Can you keep your I apologize. I'll take my mask off. I forgot. I was saying that she has the burden of showing that a vacancy existed during the relevant period of time. At this point, discovery is complete. The Postal Service is required to post vacancies to current employees, so it's unusually well positioned to respond to discovery requests. And despite this, she is not appointed to any available vacancies. Well, she claims she could have performed the functions of window clerk. Correct. So she's pointing to a position title. That's different than showing that a vacancy was available and that there was a job that they could have offered her. So the difference here means that if she had shown that there was a posting for a combined distribution window markup clerk, for example, then we could do a better analysis of what the essential functions were. There was a lot of discussion about what the functions of these jobs were. At each Postal Service location, they can be window distribution or markup clerk are positions that historically have been sometimes separate, sometimes together. When they are at different locations, even if they are combined or separate, they can also have different functions depending on the location. So here, the fact that she is not pointed to a job posting that was specifically available or a person that was hired for a position during this period of time means that it's very difficult to create a record on what the relevant functions are, because she's talking about several different jobs and general job titles. Are you saying there was not an opening at the time? I'm saying she hasn't pointed to any openings during the relevant period of time. And that's her burden right here. But you didn't refute it? We did refute her qualifications for the job. As you pointed out, she had very stringent restrictions, four hours of work, sitting only 10 pounds. But did you produce any testimony at deposition or any affidavits saying that there were no windows clerk positions open at the time she wanted to come back? No affidavits or testimony, but we did produce the certification in July 2016 indicating that there were no positions that would accommodate her disability. That was in connection with her retirement application. But there's no substance behind that. It's just a form, right? It indicates that they have looked and that there is no available accommodation. It cites the Rehab Act. So that is in connection with her disability. What type of interactive process did you engage in? There were two main periods I think that it's useful to look at. One in February 2016 when she initially requested, made a request to come back to work. And from there until the certification in July 2016. And then in August of 2017 when she renewed her request through her attorney through the offer of work in November 2017. Between those two periods, she did not in the district court allege that she made any contact with them to renew her request. What interactive process did you engage in? So during the first period, the certification indicates so first of all, she met with her supervisor who talked to her about her disabilities and there is deposition testimony about that. They obtained her medical and so the email exchanges include her medical documentation to ascertain the parameters of the work that she wanted to do. There are some emails about the search. And then this July certification indicates that a search has been done. And then after that, despite the fact that she has not reengaged, there was some communication in the spring of 2017 about doing another search. And again in the summer of 2017, after her attorney reengaged in August 2017, then they scheduled a meeting with the district reasonable accommodation committee. They met and obtained the updated medical and offered the position. What interactive process? By interactive, do you mean meeting with her and obtaining her restrictions or do you mean something different than that? Meeting with her and responding to her questions or something different than that? The only meetings with her were in February 2016 and then after her attorney contacted I believe in August or the fall of 2017. So those are the only ones I knew of. And then in the spring of 2017, someone saw her at the post office and asked her for her medical again. So you're saying that no more is required than that? That this interactive process doesn't contemplate any more communication as long as you were doing something? The informal process requires good faith participation from both parties. So when she contacted them in February 2016, they responded to her. There's no allegation that they didn't, that they didn't meet with her. It requires them to obtain her medical and do anything necessary to determine what the parameters of her abilities are, which they did. And I don't think there's any allegation that when she wanted to meet with them, they were not responsive. So the requirements of the interactive process are that they respond to her and that they obtain the parameters of her job. Those have all been met here. Her only... What is the evidence that there were no window clerk positions available? So first of all, it's her burden here to show that there was a position available. The Rehabilitation Act is concerned with employees being given jobs that are  That is, I think, an important point to underline here. Was there discovery in the case? There was discovery, yes. And so was there written depositions? There was written discovery, there were several  or that we did not provide what was necessary. Well, that's why I was asking, was there any testimony in depositions or affidavits that we searched for window clerk positions and nothing was available? There was testimony from, so there were besides the certification in July 2016, there was testimony from the Coralville manager from who, where she eventually got a position saying that they didn't have sedentary work there, that they didn't have any work that met her qualifications. So up until and he knew that about the location, so up until she updated her medical in 2017, after which she was immediately offered a job, he knew that they did not have any positions available for her. I take it that the procedure that you use in the post office is if you want to have a face-to-face meeting after you've requested an accommodation, then you ask to meet with the accommodation committee? Correct. You can always request a meeting with a reasonable accommodation committee. So what's the purpose of the committee and when does that usually, when and how does that usually get triggered? The purpose of the committee is usually to determine the precise nature of the person's limitations. So here I believe they met once and there was some discussion and she realized she could submit updated medical or after that she submitted updated medical and then they met again and then they offered her the position. One of the reasons I'm asking that question is that basically she requests an accommodation and then the other side says you didn't do anything. You say you did. And it's easy to say, well, it's her burden or it's the post office burden. I get all that. But what normally happens in this when things seem to be stalled, when somebody feels they are being quote stonewalled, end quote? You're right that they always have an opportunity to request a meeting with the district reasonable accommodation committee or anyone else and here that was not done. I think her application in the spring of 2016 for disability or retirement is consistent with her understanding that she was not physically qualified for any positions that were available. And so that provides I think an explanation for why that was not done. Just out of curiosity, do you need to continue to be finding an accommodation for somebody once they've submitted that application for retirement? That application does not terminate it but what does is once they have done the search and certified that there are no reasonable accommodations available then it's her obligation to renew this process and come back to them and say that she would like an accommodation. So there's no obligation for a rolling continuing search. And where do we find the authority for you saying that it's the employee's obligation to come back and renew their request? We have a site about renewal in our brief. I don't recall the case name. Thank you. And wasn't there some testimony that this is not the way the process is intended to work? I think there was testimony about ideal ways it could proceed in the post office and I think I think I would love for there to be more things on the record about what was done and why things were done. But I think part of the problem with this record is that because she wasn't pointing to a specific position, it's a little bit difficult to create that record. So there could have been some testimony about how things that were done that were not ideal. I thought there was testimony that so either Price or Logan says it's not my job and then someone else said no, it is your job. And then I think someone else also said it's not supposed to drag on like this. It's not supposed to take so long. There's supposed to be, when you don't get an answer when you put the feelers out and you get no answers you're supposed to follow up. I don't recall anyone saying that specifically. I do recall the emails in the spring of 2016 that they're pointing to where it's not clear that there was a response or it's not clear what was done there. But first of all, we don't need to get into that unless she has shown a specific position that existed during this period of time, which she has not as I said. And we do have the certification at the end of that period the disability certification saying that no positions are available during that period. I wonder what you're really saying is let me try to characterize what the other side is saying. They're saying you didn't try hard enough. But your response is you haven't shown it would have made any difference if we tried harder because it's your obligation to show there was a position available. Is that basically it? Yes. And I think that they are One follow up on that. There must be some way in discovery that a person that's unsatisfied as she is with what the post office did could discover whether there actually were any positions available that fit her restrictions. Yes, of course. She could have asked for postings of all available positions, all positions that were filled during this period of time. The Postal Service is required by the collective bargaining agreement to post available positions to its current employees so during that time she had access to all of those positions and certainly the Postal Service is unique as a large public employer as being subject to this discovery because of its obligation to create these documents. So, yes, they had that opportunity. Chatham is basically trying to put the obligation on the post office to prove a negative, which is always difficult. So are you saying that you weren't asked that question in discovery? The discovery is not on the record, but yes. I'm sorry, what? Discovery is not on the record? The discovery request the written discovery request is not on the record, but she did not ask those questions in written discovery and she did not ask those questions during the depositions which are on the record. And more to the point, on appeal she hasn't said I asked for it and they refused to give it to me. Correct. There's been no allegation that discovery is incomplete or that we did anything improper in discovery. Unless there are further questions. Thank you. We'll hear rebuttal. Morning. On the discovery point. I'll get straight back to the point. We can't hear you. The discovery point we were just talking about did you or someone else representing Ms. Chatham ask for whether these positions existed in the government's stonewall in discovery? I believe it's clear that we got emails from Price and Logan where Price sent an email to Logan saying we may have identified a position for her in the Cincinnati plant. This was in the summer of 2017. I'm asking about discovery. Just a discovery related question. Did you say were there any positions with these qualifications available during this period of time in this geographic region? I don't know if that question was specifically asked in discovery. I would like to address the question. Did anybody go back and follow up on these emails to say you said in this email there might be this position. What position were you talking about and what are the restrictions? So we would have some idea whether in fact there was something available that the post office didn't offer. Sir, I don't know if they asked specifically did you follow up on or in discovery did you follow up on this position that was identified in July 2017. But I would like to say that they did say there was a position. Before you go on, it seems like we're sort of left with this big void where you say they didn't accommodate her. By inference you'd say had they, there were positions available and she would have been able to go back to work and she would have had an income. But there doesn't seem to be any evidence that corroborates any of that. There's the evidence from the email from Price to Logan saying we may have identified a position for her in the Cincinnati plant in the summer of 2017 that they then failed to follow up on. But you just told me you don't know what that position was or whether it even met her restrictions. All we know is there might have been one. And it was never investigated or communicated to Ms. Cheatham that she could have had a job offer. But I mean, just to answer Judge McKeague's question, he's saying it's possible what we'll call lack of interactive process was harmless because you could have interacted for a million years and it couldn't find the job. And that's what the point of follow-up on discovery. What do you mean by this job and were other jobs available? Why isn't that relevant? It is relevant. I don't know what it would have ended up showing if they had said this was the job because they made such little effort to actually follow up on it. And they never told Ms. Cheatham we may have found a job for you in the summer of 2017. They didn't bring it to her attention. But isn't it your obligation to be able to show us that there was a position that she could have filled, given her restrictions? Sir, I don't think there's any way of knowing if she could have filled the job because it was never followed up on. The evidence that we've had... I'm asking a pretty straightforward question. Is that your burden as your opposing counsel says, or isn't it? It is our burden to show that she could have had a job. And you think you fulfilled that burden, at least for purposes of refuting the summary judgment motion by virtue of this one email that we don't know what it meant. Yes, sir. I do believe we fulfilled the burden by stating they said there may have been a position available and their job was supposed to be to follow up on that. To figure out if it would fit her work restrictions. To communicate that to her and tell her... And I'm just trying to figure out why isn't it all of your jobs as her lawyer to follow up on that and find out what it meant? I understand, Your Honor. All I can say is that they identified a position that she could have fulfilled and it shows that it's evidence that they weren't doing their jobs because they failed to follow up on it and they failed to tell Ms. Cheatham that this position was available. I have some questions. Sure. That Cincinnati job was not the job that was beyond her travel agreement? It was not. That job was the Dayton Call Center position. And then that was the summer of 17 that they identified this job? Yes, ma'am. Okay, so it had already been over a year. So when did they offer her the distribution clerk job? It was November of 2017 after she had filed an EEO complaint and after Mr. Price had tried to fire her. So this predated that complete breakdown in the relationship when they could have had an opportunity to say, hey, there's a job available. Let's look into that. Let's tell Ms. Cheatham. Let's see if we can make this work for her. Instead, they just never followed through on it. And then in terms of the window clerk job that you say she was able to do when she first asked to come back, was there, did you identify an available job? We didn't identify a job posting that existed. We identified the fact that her work restrictions fit the old job that she was doing that she was still on the rolls at Corrieville to do. So she could have been accommodated to return to a job that she technically had. She was on their rolls. So did it matter whether there was an open job? No, I think that they could have accommodated her regardless of whether they had a posting for a job as a window clerk. I think that they could have said. Can you elaborate on that? Are you saying that because it was her old job, she had a right to come back to that job? I believe that because she was on the rolls at Corrieville as having that position, when she said, I'm ready to come back and I'm requesting a reasonable accommodation to do that, they could have done more to try and accommodate her by saying, okay, we need to open up another spot as window clerk and try and bring Ms. Cheatham back into this. Okay, but is there, does the law require that they open up another spot? No, it doesn't require that they have to do that. It requires that they have to try and make their best efforts they can to accommodate her. The evidence that they have is that, well, there is nothing available to her. What they have to rely on for that is the certification in the summer of 2016 that is completely baseless because it was filled out by someone, not Price, not Logan, an employee of the post office in North Carolina who was processing her disability retirement paperwork. There is no affidavit supporting that she did anything. It all takes us back to the discovery point. It's just so basic to say, can you tell us were there any openings with these restrictions in these areas? And they have to answer that honestly. And if they say no, that's one path. If they say yes, that's another path. And we're stuck shadow boxing without knowing this critical information. All we've been able to do is identify that they found a position she might have been able to do and then they never followed up on that. Okay, but that doesn't pertain to the window clerk position. It pertains to reasonable accommodation to her to have any position and say we found something she might be able to do. That's part of the reasonable accommodation regulations. It doesn't have to be the exact same job. They've got to be able to find her something that she can do. So let me see if I understand this right. You're hanging your hat on this one email that said they've identified what might be a position that she could fill. You think that gets you by summary judgment. So that gets you to a trial. But you don't have any evidence that you can point to that you would then introduce at the trial that would establish that in fact there was a position, right? Yeah, there's not going to be a job posting that says... And discovery is closed. So why would we be sending this back to give you a trial to try to establish something for which you freely admit you don't have any evidence? Because the fact that they tried to identify a position and then failed to follow through on it and then they made no efforts to try and communicate with other post offices to see is there any way that we can accommodate Ms. Cheatham here. I don't believe it had to be a position that was advertised as open. They could have said we need to open a position here. They could have created a position. They could have modified an existing position. There's other things that the post office could have done to try and accommodate her when she asked for this. And the fact that they just stopped trying, they made basically no efforts after the spring of 2016 shows that they weren't participating in this process in good faith. So if you can establish that somebody has failed to accommodate, but you can't establish that there was something they could have accommodated the employee with, what's the remedy if a jury agrees with you? I believe that they could have said they were bad faith actions in not following through with this for the year and a half when she could have elected to try and fill a different position, try and get a different job, try and go on disability recovery. She went for a year and a half without any money. The remedy could have been what was her pay supposed to be for that period of time? So you would ask the jury then to award her the pay she would have earned for this year and a half when you say they didn't accommodate her, when you can't show that there was a job available for her during that period. Is that the way it would work? We'll be able to show that she could have performed a job, but there was no efforts from her supervisors to try and find one for her. Thank you. I think we've come around this circle a couple times. Thank you very much to both of you for your written submissions and your arguments. Thanks for answering our questions. The case can be submitted and the clerk may adjourn court.